**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| City of Chandler, et al.,<br><br>Plaintiffs,<br>v.<br><br>Bank One, NA., et al.,<br><br>Defendants. | No. CV 03-01220-PHX-JLG[*] |
| State of Arizona ex. rel. Treasurer David A. Patterson, et al.,<br><br>Plaintiffs,<br>v.<br><br>Credits Suisse First Boston Corp., et al.,<br><br>Defendants. | No. CV 03-01618-PHX-JLG |
| Crown Cork & Seal Company Inc., Master Retirement Trust, et al.,<br><br>Plaintiffs,<br>v.<br><br>Credits Suisse First Boston Corp., et al.,<br><br>Defendants. | No. CV 03-02084-PHX-JLG<br><br>**ORDER** |

Defendant Credit Suisse Securities (USA) LLC, formerly known as Credit Suisse First Boston Corporation, moves to transfer venue of the three captioned cases to the United States District Court for the Southern District of New York. See 28 U.S.C. § 1404(a). Plaintiffs (the "Noteholders") in all three cases oppose the motion. For the reasons that follow, the court grants

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, presiding pursuant to intercircuit assignment to the District of Arizona.

the motion to transfer venue.[1]

## I. Background

These cases were originally filed in Arizona state court and removed to the United States District Court for the District of Arizona in 2003. They were then transferred to the United States District Court for the Southern District of Ohio (the "Ohio MDL court") by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings in In re National Century Financial Enterprises, Inc. Investment Litigation, MDL-1565. The multidistrict litigation included 23 actions filed in courts in Ohio (where National Century was headquartered and where it filed for bankruptcy), Arizona,[2] Florida, Louisiana, New Jersey, and New York. The actions all related in some way to the securities fraud committed by National Century and its principals. Through settlements and court rulings, a great majority of the claims were resolved during the consolidated pretrial proceedings.

One group of claims, however, was not resolved – those brought by noteholder investors in the Arizona and New Jersey actions against Credit Suisse, the seller of the notes. The noteholders who filed suit in Arizona are institutional investors (including governmental entities, investment

---

[1] The request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991).

[2] A fourth action was transferred from this court to Ohio by the Panel – Rebecca S. Parrett v. Bank One N.A., et al., CV 03-00541-PHX-MHM (D. Ariz.). Other than generally relating to the downfall of National Century, the Parrett case had no affiliation with the three Noteholders actions filed in Arizona by the Noteholders. Ms. Parrett was a National Century executive who moved to Arizona from Ohio and who was later convicted on numerous counts of securities fraud, wire fraud, and conspiracy. See U.S. v. Rebecca S. Parrett, No. 2:06-cr-129-2 (S.D. Ohio) (Dkt. # 982). After her conviction, Ms. Parrett fled the United States. The Ohio MDL court dismissed the Parrett civil action under the fugitive disentitlement doctrine. See In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 1415).

funds, banks, insurance companies, trusts, and other entities from various states and foreign countries) who collectively purchased over $1.5 billion of National Century notes between 1998 and 2002.[3] The noteholders who filed suit in New Jersey likewise are institutional investors who invested several hundred million dollars in National Century notes. In a March 2, 2012 ruling that denied in large part Credit Suisse's motions for summary judgment in the Arizona and New Jersey actions, the Ohio MDL court held that the noteholder plaintiffs had submitted sufficient evidence from which a jury could reasonably find that Credit Suisse had engaged in fraud in connection with selling securities to the plaintiffs. See In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 1846).

The Ohio MDL court then notified the Panel that pretrial proceedings had been completed in the Arizona and New Jersey actions and that they were ready for trial. On April 20, 2012, the Panel remanded three actions to the District of Arizona and two actions to the United States District Court for the District of New Jersey.[4]

Credit Suisse has now moved to transfer venue of the three Arizona cases to the Southern District of New York. It has also moved in the New Jersey court to transfer venue of those two cases to New York.

The undersigned judge, who presided over the National Century MDL in the Southern District of Ohio, has been designated pursuant to intercircuit assignment to perform judicial duties

---

[3] Though there were three separate investor suits filed in Arizona, each of the complaints contain identical substantive allegations, and plaintiffs are all represented by the same legal counsel in Houston, Texas.

[4] The two New Jersey cases are captioned Metropolitan Life Ins. Co., et al. v. Bank One, N.A., et al., Case No. 2:03-cv-1882 (D.N.J.), and Lloyds TSB Bank PLC v. Bank One, N.A., et al., Case No. 2:03-cv-2784 (D.N.J.).

in the District of Arizona in connection with the three Arizona cases.

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) thus requires two findings: (1) that the proposed transferee district court is one where the action might have been brought, and (2) that the convenience of parties and witnesses, in the interest of justice, favors transfer. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

Where there is an MDL proceeding, § 1404(a) motions are most appropriately raised once the Panel has remanded an action to the originating court. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 39 (1998) ("[O]n any view of § 1407(a), if an order may be made under § 1404(a), it may be made after remand of the case to the originating district court.") (footnote omitted); see also Shah v. Pan Am. World Servs., Inc., 148 F.3d 84, 89 (2d Cir. 1998); In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008, Nos. 09-02005-CIV, 09-20401-CIV, 2009 WL 4639348, at **3-4 (S.D. Fla. Nov. 5, 2009).

## III. Discussion

### A. The Three Arizona Actions Could Have Been Brought in the S.D.N.Y.

In evaluating whether an action might have been brought in another district, a court should look to whether the proposed transferee court would have subject matter jurisdiction and personal jurisdiction and would be a proper venue. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).

The Noteholders do not dispute that they might have brought their actions in the Southern District of New York. Earlier in the MDL proceedings, the Ohio MDL court held that federal

subject matter jurisdiction existed to hear the Arizona actions under 28 U.S.C. § 1334(b) because they related to the National Century bankruptcy proceeding. See In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 389). Further, none of the parties have identified any personal jurisdiction concerns related to New York, and in fact ten of the original defendants either resided in or had their principal places of business in New York.[5]

As to venue, a substantial part of the events giving rise to the Noteholders' claims arose in the Southern District of New York. See 28 U.S.C. § 1391(b)(2). Many of the corporate defendants allegedly committed their wrongdoing, at least in part, from New York.[6] Credit Suisse in particular sold the notes and allegedly made misrepresentations from New York. And, as will be explained in more detail below, a substantial number of plaintiffs or their investment advisors are located in New York. The Ohio MDL court, in holding that New York law applies to the Noteholders' common law claims against Credit Suisse, found that New York's contacts with the claims are "many and strong." In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 1846 at 20).

---

[5] These ten defendants are Credit Suisse, as well as Beacon Group LLC, Beacon Group III - Focus Value Fund, L.P., Deloitte & Touche, LLP, JP Morgan Chase Bank, JP Morgan Chase & Co., JP Morgan Partners L.L.C., PriceWaterhouseCoopers, LLP, Thomas Mendell, and Harold Pote.

[6] It is worth noting that four of the cases in the National Century MDL were originally filed in the Southern District of New York: ING Bank N.V. v. JP Morgan Chase Bank, et al., No. 1:03-7396 (S.D.N.Y.); New York City Employees' Ret. Sys., et al. v. Bank One, N.A., et al., No. 1:03-9973 (S.D.N.Y.); ING Bank N.V. v. PriceWaterhouseCoopers, LLP, No. 1:05-7217 (S.D.N.Y.); Lance Poulsen, et al. v. Harold Pote, et al., No. 1:05-10575 (S.D.N.Y.). These cases were litigated in the Ohio MDL court to varying degrees, with a handful of the claims of ING and the New York City Employees' Retirement and Pension Funds being dismissed on motions under Fed. R. Civ. P. 12(b)(6). The remainder of the claims of these plaintiffs and of plaintiffs Lance and Barbara Poulsen were voluntarily dismissed with prejudice.

**B. Convenience and Interest of Justice**

"Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). A court may consider numerous private and public factors in determining whether a transfer of venue would serve the convenience of parties and witnesses and be in the interest of justice, including: (1) plaintiffs' choice of forum, (2) the parties' contacts with the forum, (3) the connection between the plaintiffs' cause of action and the forum, (4) convenience of the parties and witnesses, (5) availability of compulsory process to compel attendance of an unwilling non-party, (6) ease of access to sources of proof, (7) any differences in the costs of litigation in the two forums, (8) relative familiarity of the two courts with the applicable law, (9) relative docket congestion of the courts, and (10) public policy. Id. at 498-99; see also Ventress v. Japan Airlines, 486 F.3d 1111, 1118-19 (9th Cir. 2007); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

**1. The Chosen Forum and Its Connection to the Parties and Claims**

The Noteholders filed suit in Arizona and they argue that their choice of forum is entitled to substantial deference. See Gherebi v. Bush, 352 F.3d 1278, 1303 (9th Cir. 2003) (noting that a "strong presumption" ordinarily applies in favor of plaintiff's choice of forum), *vacated on other grounds by* Bush v. Gherebi, 542 U.S. 952 (2004). The amount of deference, however, is minimal when the "operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); see also Ventress, 486 F.3d at 1118-19.

The court finds that the connections the parties and claims have with Arizona are

substantially fewer than the connections with New York. The sole alleged connection with Arizona is that one of the 118 plaintiffs – the Arizona State Treasurer – resides or has a principal place of business in Arizona. The Noteholders correctly observe that the Treasurer invested on behalf of a government investment pool in which 109 local governmental entities in Arizona have an interest. Even so, none of the local governmental entities purchased notes, nor did they have any contact with Credit Suisse. An individual in the Treasurer's office was the one who read the offering materials received from Credit Suisse and made the decision to invest in National Century notes on behalf of the pool. See In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 1581, Az. Noteholders' Factual App'x at 3-5). Credit Suisse thus dealt with and allegedly defrauded only one plaintiff from Arizona.

On the other hand, New York's connections with parties, claims, and central facts of the case are strong. As the Ohio MDL court found in holding that New York law applies to the Noteholder's common law clams:

> New York is home to the seller Credit Suisse, which made representations and sold the notes from New York. More plaintiffs are organized under the laws of or have their principal places of business in New York than in any other state. New York has the most purchasing entities, and New York purchasing entities bought more NPF notes, in terms of dollar value, than did the purchasing entities of any other state. New York was also the primary point of contact within the United States for the foreign plaintiffs. Finally, for the American-based plaintiffs with places of organization or principal places of business in states other than New York, it is clear from the materials submitted – particularly in the plaintiff-specific appendix (attached to doc. 1581) regarding how plaintiffs received and relied on Credit Suisse's alleged misrepresentations – that those plaintiffs knew they were dealing with a New York seller.

In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig., No. 2:03-md-1565 (S.D. Ohio) (Dkt. # 1846 at 20).

Accordingly, the court finds that plaintiffs' choice of forum is entitled to little weight.

### 2. Convenience Factors Strongly Favor New York

The convenience of the parties and witnesses carries significant weight in determining whether transfer of venue is appropriate. See Int'l Comfort Products, Inc. v. Hanover House, 739 F.Supp. 503, 507 (D. Ariz. 1989); Leyvas v. Bezy, No. CV 07-1032-PHX-SMM, 2008 WL 2026276, at *3 (D. Ariz. May 9, 2008) ("The relative convenience to witnesses, both party and non-party, is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)."). Here, the convenience factors point clearly in favor of a transfer to New York.

New York is the most convenient forum for the parties. Credit Suisse's operations in the United States are based in New York, and more plaintiffs (13) have their principal places of business in New York than in any other state. Of the 100 or so plaintiffs whose principal places of business are ascertainable from the complaints, at least 75 of them are located east of the Mississippi River or in a foreign jurisdiction. For the foreign plaintiffs, who are located in Europe, Bermuda, and the Cayman Islands, travel to New York City is likely to be more convenient than travel to Phoenix. These foreign investors likely are accustomed to doing business in New York City.

New York is also the most convenient forum for the witnesses. Many of the plaintiffs purchased notes through investment advisors, and the Ohio MDL court grouped the plaintiffs into 25 purchasing entities. Only 3 purchasing entities are from the West Coast. The rest are from the Eastern United States (11), Central United States (4), or a foreign country (7). Not only does New York have more purchasing entities (4) than does any other state, a number of non-New York plaintiffs (about 15) invested through New York purchasing entities. Not surprisingly then, Credit Suisse has demonstrated that 48% of the nearly 200 fact witnesses (party and non-party) are within the 100-mile subpoena power of the Southern District of New York, while just 2% are within this

court's subpoena power. Of the rest of the witnesses, 43% are in the Eastern and Central United States or a foreign country.

The Noteholders argue that not all of these fact witnesses will be called to testify at trial. One would hope so, but the Noteholders have not established that Credit Suisse's witness list inaccurately depicts the geographic distribution of the likely trial witnesses. The Noteholders have likewise failed to rebut Credit Suisse's clear showing that New York is easily the most convenient forum for the witnesses. Moreover, in weighing convenience a court may consider the importance of the witnesses. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984). Credit Suisse's witnesses, who will testify to whether they knew of National Century's fraud, are among the most important and reside in New York or the East Coast.

Finally, ease of access to sources of proof does not alter the convenience determination. Discovery was completed and exchanged in electronic form during the consolidated MDL proceedings before the Ohio MDL court.

Accordingly, the court finds that the convenience factors weigh heavily in favor of a transfer to New York.

**3. Public Factors**

The Noteholders argue that there is a strong public interest in these actions being tried in Arizona because the Arizona Treasurer invested $130 million of funds from local governmental entities in National Century notes. Though the court does not dispute the legitimacy of this interest, the Noteholders have offered no compelling reason why the Treasurer's interest should be elevated above the interests and convenience of the bulk of the other parties and witnesses. The Treasurer is but one of 118 plaintiffs, and other plaintiff groups lost more money than the Treasurer did. In

addition, Arizona is not the only state with a public interest at stake. Among the other plaintiffs are governmental entities and state pension funds located in various states, including the Manhattan and Bronx Surface Transit Authority.

Other public factors do not carry much weight. The Southern District of New York is relatively more familiar than this court with New York common law, but the elements of a fraud claim are familiar to any judge. There is less docket congestion in the Southern District of New York than in the District of Arizona, but that fact is negated by the undersigned judge's acceptance of an intercircuit assignment to the District of Arizona to preside over these three cases.

A final note on judicial economy – Credit Suisse's understandable goal in moving for transfer of venue here and in New Jersey is so that all five noteholder actions against it can proceed to a single trial. Such a result would seem to serve the interests of judicial economy, consolidating the parties' and the judiciary's resources by having a single trial and eliminating the risk of inconsistent rulings or verdicts on the same factual and legal issues. See Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960) (stating that an aim of § 1404(a) is to prevent the waste of "time, energy and money" caused by "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts."). It would appear that the Southern District of New York is the only venue in which the actions filed in Arizona and New Jersey could proceed to a single trial. The Arizona actions have only an insignificant connection to New Jersey,[7] and the court is unaware of any relevant connection that the New Jersey actions have with Arizona.

## IV. Conclusion

---

[7] Three plaintiffs have a principal place of business in New Jersey; they acted through investment advisors located in New York and Illinois.

The court thus finds that for the convenience of the parties and witnesses, and in the interest of justice, these three cases should be transferred to the United States District Court for the Southern District of New York. Credit Suisse's motions to transfer venue (Dkt. # 199 in Case No. CV 03-01220-PHX-JLG; Dkt. # 129 in Case No. CV 03-01618-PHX-JLG; and Dkt. # 44 in Case No. CV 03-02084-PHX-JLG) are GRANTED.

The Clerk of Court is directed to transfer these cases to the Southern District of New York.

DATED this 27th day of July, 2012.

s/ James L. Graham
James L. Graham
United States District Judge